**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

UNITED STATES OF AMERICA

v.

CARLOS AYALA,

*Defendant*.

Case No. 24-cr-000326-JDB

## MOTION FOR RETURN OF PROPERTY

Defendant Carlos Ayala ("Mr. Ayala") by and through undersigned counsel, respectfully moves this Honorable Court, pursuant to Rule 41(g) of the Federal Rules of Criminal Procedure, to order the return of his property which is currently in the possession of the United States Government. Specifically, Mr. Ayala seeks return of the following items:

(1) His personal cellphone;

(2) His personal laptop; and

(3) His personal iPad.

With awareness that the FBI was poised to execute a search and seizure warrant, Mr. Ayala voluntarily surrendered these devices to the Government on January 9, 2024. In support of this request, Mr. Ayala states the following.

## BACKGROUND

On January 8, 2024, Mr. Ayala was charged via Criminal Complaint with alleged violations of the following federal statutes:

(1) 18 U.S.C. § 1752(a) - Knowingly Entering or Remaining in any Restricted Building or Grounds Without Lawful Authority;
(2) 18 U.S.C. § 1752(a)(2) - Knowingly, and with intent to impede or disrupt the orderly conduct of Government business;
(3) 40 U.S.C. § 5104(e)(2)(D) - Disorderly Conduct in a Capitol Building;

(4) 40 U.S.C. § 5104(e)(2)(G) - Parading, Demonstrating, or Picketing in a Capitol Building; and
(5) 18 U.S.C. § 231(a)(3) - Obstruction of Law Enforcement During Civil Disorder.

*See* ECF 1. The charges stemmed from Mr. Ayala's participation in the events at the United States Capitol on January 6, 2021. ECF 1-1.

The day after being charged, Mr. Ayala took steps to fully cooperate with law enforcement by both self-surrendering and by voluntarily turning over his personal electronic devices, including (1) his personal cell phone; (2) his personal laptop; and (3) his personal iPad, and providing all passwords necessary to unlock these devices. *See* Ex. A. These devices hold important personal data, including Mr. Ayala's text messages and apps used regularly such as his home's security and alarm system. On January 11, 2024, Government counsel informed Mr. Ayala's attorney that she had passed along the relevant password information to law enforcement, who was in the process of extracting data from Mr. Ayala's devices. She indicated that the agent handling the extraction was "hoping he [could] get them done by tomorrow." *Id.*

Despite these assurances, nearly two weeks later, the Government had not returned Mr. Ayala's property. Accordingly, undersigned counsel emailed the AUSA assigned to Mr. Ayala's case to inquire as to the status of the extraction. The AUSA apologized for the delay, citing weather issues, and indicated that the law enforcement agent responsible for the extraction was simply "waiting to confirm that the cellphone successfully copied." Ex. B. Despite promises that the forensic examination of Mr. Ayala's phone would be completed by the close of business the following day, the process dragged on. As January turned into February, Mr. Ayala was still deprived of his cell phone, laptop, or iPad. Undersigned counsel was then informed that resolution of the issue of returning property had been passed along to the FBI's Office of General Counsel.

Around this time, another January 6th defendant's case was pending before the Supreme Court. The case, *Fischer v. United States*, 64 F.4th 329 (2023), addressed the scope of 18 U.S.C. 1512(c)(2) – one of the federal statutes under which hundreds of January 6th defendants were being prosecuted. Notwithstanding the fact that Mr. Ayala was **not** charged with violating 18 U.S.C. 1512(c)(2), undersigned counsel was subsequently informed that because of the potential repercussions of the *Fischer* case, law enforcement intended to retain all seized electronic devices "indefinitely."

Now, more than ten months after he initially surrendered them to the Government, Mr. Ayala's electronic devices still have not been returned to him. Given these circumstances, the defense respectfully moves this Court to order the return of Mr. Ayala's property immediately.

## LEGAL STANDARD

Rule 41(g) of the Federal Rules of Criminal Procedures "allows the owner of property the government has seized in a search to seek its return." *In re Sealed Cases*, 716 F.3d 603, 605 (D.C. Cir. 2013). Specifically, the text of the Rule provides the following:

> A person aggrieved by an unlawful search and seizure of property or by the **deprivation of property** may move for the property's return. The motion must be filed in the district where the property was seized. The court must receive evidence on any factual issue necessary to decide the motion. If it grants the motion, the court must return the property to the movant, but may impose reasonable conditions to protect access to the property and its use in later proceedings.

Fed. R. Crim. P. 41(g) (emphasis added). In practice, this means that "once an item of property is no longer pertinent to a criminal prosecution, the item may be returned on application to the same criminal court." *United States v. Wilson*, 540 F.2d 1100, 1103-04 (D.C. Cir. 1976).

Application of the rule is not limited to property that was **unlawfully** seized by the Government. Rather, "[u]nder Rule 41(g) property may be returned to a defendant regardless of whether the initial seizure of the property was lawful or not." *United States v. GossJankowski*, 669

F. Supp.3d 1, 4 (D.D.C. 2023); *U.S. v. Hubbard*, 650 F.2d 293, 303 (D.D.C. 1980) ("Lawful seizure of the property, of itself, may affect the timing of the return, but never the owner's right to eventual return."). Indeed, this Court has recognized that lawfully seized property may only be retained by the Government "pending exhaustion of its utility in criminal prosecution." *GossJankowski*, 669 F. Supp.3d at 4 (quoting *Hubbard*, 650 F.2d at 303 n.26). To this end, the District Court "has 'both the jurisdiction and the duty to ensure the return' to a defendant of 'property seized from him in [an] investigation but which is not alleged to be stolen, contraband, or otherwise forfeitable, and which is not needed, or is no longer needed as evidence.'" *Id.* (alterations in original) (quoting *United States v. Wilson*, 540 F.2d 1100, 1101 (D.C. Cir. 1976)); *U.S. v. Rayburn House Office Building, Room 2113, Washington, D.C. 20515*, 497 F.2d 654, 663 (D.D.C. 2007) (quoting Fed. R. Crim. P. 41(g) advisory committee's note to 1989 amendments) (remarking that the Government's continued retention of a defendant's property is reasonable only when "the United States has a need for the property in its investigation or prosecution.").

The Rule itself does not set forth an explicit standard "to govern the determination of whether property should be returned to a person aggrieved . . . by the deprivation of the property." *Id.* Instead, as highlighted by this Court and the Rule's Advisory Committee, the issue to be decided is whether the "United States' *legitimate interests* can be satisfied even if the property is returned." *Id.* (emphasis in original). If the Court answers this inquiry in the affirmative, the Government's "continued retention of the property would become unreasonable," and the defendant's request should be granted. *Id.*

**DISCUSSION**

In an effort to fully cooperate with the Government and aid in its investigation, Mr. Ayala consented to the Government's seizure of (1) his personal iPhone; (2) his personal laptop; and (3) his personal iPad in January of 2024. The Government has retained possession of Mr. Ayala's

devices for ten months and made repeated assurances that it was testing and intended to promptly return the electronics to Mr. Ayala. Then, in an abrupt about-face, the Government informed undersigned counsel that, in light of the Supreme Court's decision in *Fischer v. United States*, it was going to indefinitely withhold Mr. Ayala's property. Thus, the Government's prolonged retention of Mr. Ayala's property is not based on a legitimate investigative need or the newfound discovery of unreviewed evidence. Rather, the Government's reversal is the result of a bureaucratic policy decision stemming from an unfavorable Supreme Court decision that is in no way relevant to the charges pending against Mr. Ayala. For these reasons, and those discussed below, the Government should be ordered to return Mr. Ayala's property.

## I. The *Fischer* Decision Is Neither Applicable nor Relevant to Mr. Ayala's Case.

As an initial matter, it is unclear how the Supreme Court's decision in *Fischer* is at all relevant to the Government's investigation in Mr. Ayala's case and its continued retention of his property. Mr. Ayala was not charged under the federal statute at issue in that case – 18 U.S.C. § 1512(c)(2). *See* ECF 1. Thus, any charging or evidentiary decisions stemming from the ruling in *Fischer* are irrelevant and inapplicable to Mr. Ayala's case, and in no way alter the scope of the evidence to be obtained from Mr. Ayala's electronic devices. Given these circumstances, it is evident that the Government's purported justification for retaining Mr. Ayala's property "indefinitely" is merely a pretense. Indefinitely holding electronic media devices appears to be premised upon one of two unsupportable motivations: 1) a hope that the devices contain evidence of other crimes that could supplant a failed obstruction prosecution, or 2) a purely punitive reaction to the successful challenge of convictions under *Fischer*. Bureaucratic gamesmanship cannot justify the prolonged retention of Mr. Ayala's electronic devices.

## II. The Government's Prolonged Retention of Mr. Ayala's Property Serves No Legitimate Purpose and Return of the Property Would Not Interfere With the Government's Investigation or Prosecution.

The Government's continued retention of Mr. Ayala's property serves no evidentiary or investigatory purpose given the magnitude of evidence already in the Government's possession. It is no secret that the events of January 6, 2021 were extensively documented by journalists, law enforcement's body-worn cameras, surveillance cameras, and even those who participated in the demonstrations at the Capitol. In the nearly four years that have elapsed since January 6, 2021, the Government has had sufficient access to this vast quantity of evidentiary material. Further, the Government has had access to Mr. Ayala's electronic devices since January 9, 2024, and has repeatedly represented that it was actively processing and extracting the data contained therein. As such, there is no legitimate need for the continued retention of Mr. Ayala's property.

A similar set of circumstances arose in *United States v. Chansley*. In that case, the defendant (the well-publicized "Q-Anon Shaman") sought the return of his property, which had been seized by the Government for more than three years. Case No. 1:21-cr-3-RCL, 2024 WL 3673672, at *1 (D.D.C. Aug. 5, 2024). The Court granted the defendant's motion, explaining that because there was "voluminous video and photo evidence of [the defendant's] conduct, his property [was] of little utility for an investigation or prosecution." *Id.* at *3. Accordingly, the Court explained, the United States' "legitimate interests [could] be satisfied even if the property [was] returned." *Id.* (internal quotation marks omitted) (quoting *Rayburn House Off. Bldg.*, 497 F.3d at 663). Here too, the Government's interest in investigating and prosecuting Mr. Ayala can still be satisfied even if the electronic devices are returned to him. Although Mr. Ayala is by no means as conspicuous as Mr. Chansley, the Government has demonstrated that it has already obtained ample video surveillance and photographs clearly depicting Mr. Ayala at the Capitol on January 6, 2021.

Moreover, the Government has possessed Mr. Ayala's phone, laptop, and iPad for more than ten months. It has had sufficient opportunity to obtain the evidence it seeks from these devices, and, by all indications, has already extracted and copied the content it has deemed relevant to its investigation. On several occasions, counsel for the Government represented that law enforcement agents were in the process of extracting information from and testing Mr. Ayala's electronic devices, evidencing the fact that the Government has *already* begun reviewing the content on Mr. Ayala's phone, laptop, and iPad as part of its investigation. Accordingly, the continued retention of Mr. Ayala's property serves no valid investigatory purpose, and, therefore, is unreasonable under the Fourth Amendment. *Rayburn House Office Building,* 497 F.2d at 663.

Under similar circumstances, in *United States v. GossJankowski*, this Court has held that the Government may not continue the prolonged retention of a defendant's electronic device when the Government "has already made copies of the information on the devices it may need for trial, and it appears nothing on the remaining device . . . is relevant" to the Government's trial preparation. 669 F. Supp.3d 1, 6 (D.D.C 2023). In that case, the Government seized the defendant's electronic devices and retained them from January 20, 2021 until the defendant filed a motion for return of property in early 2023. *Id.* at *2. The Government admitted that it had already downloaded everything it needed from the devices. *Id.* at *5. Given the circumstances, the Court reasoned that "there [was] simply no reason for the government to maintain possession over [the defendant's] six electronic devices." *Id.* at *2, 6.

Here too, there is simply no reason for the Government's continued seizure of Mr. Ayala's property. The Government has possessed the property for ten months and on several occasions represented that it had extracted evidence from and tested the devices as part of its investigatory process. Simply put, the Government has taken what it needs from these devices, and their return

to Mr. Ayala would in no way impede the Government's ability to investigate and/or prosecute Mr. Ayala. The prolonged seizure of Mr. Ayala's property serves no legitimate governmental purpose, and, as a result, is patently unreasonable under the Fourth Amendment. Accordingly, the Government should be ordered to return the property to Mr. Ayala immediately.

## CONCLUSION

The process provided for by Rule 41(g) reflects the longstanding principle that "the party from whom materials are seized in the course of a criminal investigation retains a protectible property interest in the seized materials," *Hubbard*, 650 F. Supp.2d at 303. Although the Government may retain seized property to effectuate legitimate investigatory and prosecutorial purposes, it may not improperly deprive a defendant of his property when the property is neither contraband nor needed as evidence. Here, Mr. Ayala has been deprived of his phone, laptop, and iPad for more than ten months, despite the Government's repeated representations that it has already extracted and tested the evidence sought from the devices. Given these circumstances, the Government's prolonged retention of Mr. Ayala's property serves no evidentiary or investigatory purpose and is inherently unreasonable. The Supreme Court's decision in *Fischer v. United States* does not alter this conclusion. Given these circumstances, Mr. Ayala respectfully moves this Court, pursuant to Rule 41(g) of the Federal Rules of Criminal Procedure, to order the Government to return his property immediately.

Respectfully submitted,

*/s/ James M. Trusty*

James M. Trusty
Ifrah PLLC
1717 Pennsylvania Ave. NW, Suite 650
Washington, D.C. 20001