UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>CARLOS AYALA,<br><br>   *Defendant*. | Case No. 24-cr-00326-JDB |

### MOTION TO DISMISS COUNT ONE OF THE INDICTMENT

  Defendant Carlos Ayala, by and through undersigned counsel, respectfully moves, pursuant to Rule 12(b) of the Federal Rules of Criminal Procedure, for the Court to dismiss Count One of the Indictment. Count One of the Indictment charges a violation of 18 U.S.C. § 231, which prohibits conduct deemed to interfere with law enforcement officers performing duties "incident to or during the commission of a civil disorder." Because this statute is both facially invalid, and invalid as applied to Mr. Ayala, the Court should dismiss Count 1 of the Indictment. In support of his motion, Mr. Ayala states the following.

### FACTUAL BACKGROUND

  On January 8, 2024, Mr. Ayala was charged via Criminal Complaint with alleged violations of the following federal statutes:

(1) 18 U.S.C. § 1752(a) - Knowingly Entering or Remaining in any Restricted Building or Grounds Without Lawful Authority;
(2) 18 U.S.C. § 1752(a)(2) - Knowingly, and with intent to impede or disrupt the orderly conduct of Government business;
(3) 40 U.S.C. § 5104(e)(2)(D) - Disorderly Conduct in a Capitol Building;
(4) 40 U.S.C. § 5104(e)(2)(G) - Parading, Demonstrating, or Picketing in a Capitol Building; and
(5) 18 U.S.C. § 231(a)(3) - Obstruction of Law Enforcement During Civil Disorder.

1

*See* ECF 1. On July 17, 2024, the Government filed an Indictment containing the same charges. ECF 17.  Relevant here, Count One of the Indictment charged Mr. Ayala with violation of 18 U.S.C. § 231(a)(3). *Id.*

The charges stem from Mr. Ayala's alleged participation in the events at the United States Capitol on January 6, 2021, the day upon which Congress certified the 2020 election. ECF 1-1. In its investigation, the Government identified Mr. Ayala by his distinctive American flag hoodie, and represented that while at the Capitol, he at one point carried a black and white flag bearing the words "We the People" and "DEFEND." *Id.* at ¶ 19. The Affidavit similarly reports that Mr. Ayala encouraged others on the Capitol's premises to "join" his political cause. *Id.* at ¶ 26.

As relevant here, the Affidavit alleges that Mr. Ayala joined a large group of people near the Senate Wing Door, *id.* at ¶ 22, where he allegedly waved a flag/flagpole through an open window. *Id.* at ¶ 25. Despite including numerous camera angles of the day's events, the Affidavit does not include any video or photographic evidence showing that Mr. Ayala took part in the "altercation at the Senate Wing door," or was the individual who subsequently threw the flagpole through the building's open door. *Id.* ¶ 24 ("AYALA was not visible on CCTV through the window between when he moved away from [the] window adjacent to the Senate Wing Door, and when the altercation at the Senate Wing door occurred."). Rather, the Government summarily concludes that because Mr. Ayala had previously been seen carrying the flag at a nearby location at the Capitol, he must have been the one to throw it through the Senate Wing Door.

It is an indisputable fact that Mr. Ayala did not assault police officers, nor did he vandalize property or physically enter the Capitol, yet he is charged with a serious felony offense.

2

## LEGAL STANDARD

An indictment must be a "plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). Rule 12 of the Federal Rules of Criminal Procedure provides that "at any time while the case is pending," the court may hear a claim that the indictment or information fails to invoke the court's jurisdiction or to state an offense. *Id.* "The operative question is whether the allegations, if proven, would be sufficient to permit a jury to find that the crimes charged were committed." *United States v. Sanford, Ltd.*, 859 F. Supp. 2d, 102, 107 (D.D.C. 2012); *U.S. v. Bowdoin*, 770 F. Supp.2d 142, 145 (D.D.C. 2011) ("A motion to dismiss an indictment challenges the adequacy of an [i]ndictment on its face."). Furthermore, an indictment's "[f]ailure to state an offense may be due to a question of statutory interpretation or a constitutional issue." *United States v. Grider*, 585 F. Supp.3d 21, 27 (D.D.C. 2022) (internal quotation marks omitted) (citing *United States v. Stone*, 394 F.Supp.3d 1, 8 (D.D.C. 2019)).

## DISCUSSION

The Court should dismiss Count One of the Indictment, charging Mr. Ayala with violation of 18 U.S.C. § 231(a)(3). That statute provides the following:

> Whoever commits or attempts to commit **any act** to **obstruct, impede, or interfere** with any fireman or law enforcement officer lawfully engaged in the lawful performance of his official duties **incident to and during the commission of a civil disorder** which in any way or degree **obstructs, delays, or adversely affects** commerce or the movement of any article or commodity in commerce or the conduct or performance of any federally protected function.

18 U.S.C. § 231(a)(3) (emphases added). Thus, to prove a violation of this statute, the Government must establish: (1) that a "civil disorder" existed at the time of the defendant's alleged conduct; (2) that civil disorder "in any way or degree obstruct[ed], delay[ed], or adversely affect[ed] commerce or the movement of any article or commodity in commerce or the conduct and performance of any

3

federally protected function[;]" (3) that one or more "law enforcement officers" were lawfully engaged in the lawful performance of their official duties incident to and during the commission of that civil disorder; and (4) that the defendant knowingly committed or attempted to commit an act with the specific intent to obstruct, impede, or interfere with those officers. *United States v. Reffitt*, Case No. 21-cr-32 (D.D.C. Mar. 7, 2022), Final Jury Instructions at 32 (Mar. 7, 2022) (ECF No. 119) (similar articulation of elements in different order). For the reasons discussed below, this statute, which is historically rooted in the suppression of expressive conduct is unconstitutional on its face and as applied to Mr. Ayala. Accordingly, the Court should dismiss Count One of the Indictment.

I. **The Statute is Overbroad and Unconstitutionally Punishes Free Expression**

A. **The Statute is Facially Invalid**

The First Amendment of the Constitution provides that "Congress shall make no law . . . abridging the freedom of speech." U.S. Const. amend. I. In pursuit of this fundamental dictate, the First Amendment prohibits the enforcement of statutes that are substantially overbroad. *United States v. Nassif*, 97 F.4th 968, 974 (D.C. Cir. 2024). This prohibition, known as "the overbreadth doctrine instructs a court to hold a statute facially unconstitutional if it prohibits a substantial amount of protected speech, even if the statute 'has lawful applications, and even at the behest of someone to whom the statute can be lawfully applied.'" *Id.* (quoting *United States v. Hansen*, 599 U.S. 762, 769 (2023)). Accordingly, this doctrine is an exception to the normal rule regarding the standard for facial challenges, allowing a court to "invalidate all enforcement of a law" if that law punishes a "'substantial amount' of protected free speech, 'judged in relation to the statute's plainly legitimate sweep,'" and no limiting construction is available. *Virginia v. Hicks*, 539 U.S. 113, 118–19 (2003) (quoting *Broadrick v. Oklahoma*, 413 U.S. 601, 615 (1973)). Thus, the Supreme Court

4

has recognized that the application of this doctrine "seeks to strike a balance between competing social costs." *U.S. v. Williams*, 553 U.S. 285, 292 (2008). To this end, the Court explained,

> [o]n the one hand, the threat of enforcement of an overbroad law deters people from engaging in constitutionally protected speech, inhibiting the free exchange of ideas. On the other hand, invalidating a law that in some of its applications is perfectly constitutional—particularly a law directed at conduct so antisocial that it has been made criminal—has obvious harmful effects.

*Id.* Thus, "particular care" must be applied when determining whether a criminal statute is unconstitutionally overbroad. *City of Houston v. Hill*, 482 U.S. 451, 459 (1987), and "speech on public issues," such as expression addressing public affairs and the governmental process, "occupies the 'highest rung of the hierarchy of the First Amendment values,'" and, accordingly, "is entitled to special protection." *Connick v. Myers*, 461 U.S. 138, 145 (1983) (quoting *NAACP v. Clairborne Hardware Co.*, 102 S. Ct. 3409, 3426 (1982)); *see also Mills v. Alabama*, 384 U.S. 214, 218-19 (1966) ("Whatever differences may exist about interpretations of the First Amendment, there is practically universal agreement that a major purpose of that Amendment was to protect the free discussion of governmental affairs. This is of course includes discussions of candidates, structures and forms of government, the manner in which the government is operated or should be operated, and all such political processes.").

Importantly, the First Amendment's protections extend not only to the spoken word, but also to expressive conduct. *Virginia v. Black*, 538 U.S. 343, 358 (2003) ("The First Amendment affords protection to symbolic or expressive conduct as well as to actual speech.") Conduct is considered expressive under the First Amendment when it "is intended to convey a 'particularized message' and the likelihood is great that the message would be so understood." *Id.* The First Amendment's protections apply even to acts that

society finds distasteful, offensive, or un-American. *Snyder v. Phelps*, 562 US 443 (2011) ("As a Nation we have chosen . . . to protect even hurtful speech on public issues to ensure that we do not stifle public debate."). For example, in *Texas v. Johnson*, the Supreme Court held that the burning of the American flag constituted expressive conduct protected by the First Amendment. 491 U.S. 397, 405-06 (1989).

Here, 18 U.S.C. § 231(a)(3) casts a wide net that impermissibly punishes a broad class of conduct, regardless of its expressive value. As an initial matter, the statute criminalizes "*any* act" that "obstruct[s], impede[s], or interfere[s]" with the duties of firefighters or law enforcement officers during civil disorder. § 231(a)(3) (emphasis added). Upon initial consideration, the statute's language would seem to prohibit violent conduct (such as pushing, shoving, or fighting a law enforcement officer) that physically endangers the public or otherwise facilitates civil disorder. But given the statute's expansive language – "any conduct" – the prohibition goes much further, providing for the criminalization of entirely non-violent forms of expressive conduct that are traditionally protected under the First Amendment. Similarly, the term "interfere" is undefined by the statute – leaving the door to criminal liability effectively wide open.

Finally, the statute's use of the phrase "incident to and during the commission of a civil disorder," similarly allows for liability untethered to one's actual involvement in violent unrest. An individual may be held criminally liable under the statute if his or her interference with police duties temporally coincides with "civil disorder."[1] Thus, it need not be shown that the defendant *incited* the civil disorder or even engaged in "acts of

---

[1] The statute defines the term "civil disorder" to mean "Any public disturbance involving acts of violence by assemblages of three or more persons which causes an immediate danger of or results in damage or injury to the property or person of any other individual." 18 U.S.C. § 232(1).

violence" that the civil disorder "involves." The term "civil disorder" fails to limit the overbreadth of penalizing "any act" of interference with police duties. Indeed, an individual could face felony punishment for engaging in a wide array of conduct ranging - from a violent altercation to merely "flipping off" a law enforcement officer - if such conduct was deemed to "interfere" with the law enforcement officer's duties and happens to coincide with "civil disorder."

Section 231(a)(3)'s broad prohibition fails to comport with longstanding principles of the First Amendment, under which the protection of speech and conduct expressing one's opinion about political and public matters is considered of paramount importance. *Mills*, 384 U.S. at 218-19. Included under this protective umbrella, is the principle that citizens must be able to critique, record, annoy, and even harangue law enforcement without fear of retribution or criminal punishment. *Hill*, 482 U.S. at 459 ("[W]e have repeatedly invalidated laws that provide the police with unfettered discretion to arrest individuals for words or conduct that annoy or offend them."); *Glik v. Cunniffe*, 655 F.3d 78, 83 (1st Cir. 2011) ("[T]he First Amendment protects the filming of government officials in public spaces."); *McCoy v. City of Columbia*, 929 F. Supp. 2d 541, 550 (D.S.C. 2013) (invalidating a state statute for overbreadth that made it "unlawful for any person to interfere with or molest a police officer in the lawful discharge of his duties."). Indeed, as noted by the Supreme Court in *City of Houston v. Hill*, the "freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state." 482 U.S. at 462-63.

7

The Supreme Court considered and struck down a similarly overbroad statute in *Hill*, 482 U.S. 451 (1987). In that case, the ordinance at issue made it unlawful for any person to "in any manner oppose, molest, abuse or interrupt any policeman in the execution of his duty." *Id.* at 461. The Court held that the phrase "in any manner," was overly broad and not "narrowly tailored to prohibit only disorderly conduct or fighting words." *Id.* at 465. The Court reached this conclusion given that "ordinance criminalize[d] a substantial amount of constitutionally protected speech, and accord[ed] the police unconstitutional discretion in enforcement." *Id.* By way of example, the Court explained, "[t]he ordinance's plain language [was] admittedly violated scores of times daily," but "only *some* individuals – those chosen by the police in their unguided discretion [were] arrested." *Id.* (emphasis added). Under such circumstances, the Court concluded, the ordinance was "susceptible to regular application to protected speech," and, therefore, was "substantially overbroad." *Id.* at 467.

Given the similarities in the statute at issue in *Hill*, and 18 U.S.C. § 231(a)(3), the Court should reach the same conclusion here. Like the ordinance in *Hill*, the statute at issue in this case criminalizes a substantial amount of constitutionally protected expression and is susceptible to inconsistent application and interpretation by law enforcement.

The risk of variability was unmistakably illustrated by law enforcement's interactions with the individuals at the Capitol on January 6, 2021. While some law enforcement officers used physical force to repel the individuals on the Capitol's premises, others effectively served as escorts to the protestors, "opening barricades" and "allowing the mob to enter the Capitol complex without resistance."[2] Similarly, while it is true that

---

[2] H.J. Mal., *Capitol Police Suspends 6 Officers, Investigates Dozens More After Capitol Riots*, NAT. PUB. RADIO (Feb. 19, 2021).

many rioters on the premises engaged in violent and/or destructive conduct, others merely participated in traditional forms of protest such as chanting, the waving of flags, and carrying expressive signs. Under 18 U.S.C. § 231(a)(3), both ends of the spectrum would face the same criminal punishment, evidencing the statute's substantially overbroad restriction upon free expression.

The chilling effect of 18 U.S.C. § 231(a)(3) is especially apparent when considering the statute's history. Specifically, the statute's legislative history illustrates that it was enacted to suppress expressive conduct – specifically, civil disobedience undertaken to promote the values of the Civil Rights movement. Section 231(a)(3) is one of three criminal offense provisions included under the Civil Obedience Act of 1968 (Pub. L. 90-284, April 11, 1968), Title X, codified at 18 U.S.C. §§ 231(a)(1)-(3)), which the Senate originally adopted as an amendment to the Civil Rights Act of 1968. The Amendment's sponsor, Senator Russell Long of Louisiana, was a known opponent of the Civil Rights Act's protections. *See* 114 Cong. Rec. 1287-94 (Jan. 29, 1968). Senator Long sought to oppose civil rights legislation that, in his view, would inhibit law enforcement's ability to detain and prosecute civil rights protestors – those who he called "incendiary rabblerousers." *Id.* Senator Long similarly opined that the amendment was needed to respond to "widespread disregard for law and order," as evidenced by the "so-called civil rights march led by Dr. Martin Luther King in the streets of Birmingham in March of 1963." 114 Cong. Rec. 1294 (Jan. 29, 1968). Simply put, the proponent of the statute at issue here, Senator Long, proposed the Civil Disobedience Act in order to provide law enforcement with a means through which they could suppress and prosecute the expressive conduct of the leaders and participants of the Civil Rights movement. *See id.* The statute's historical purpose – i.e.,

the suppression of the speech and expression of Civil Rights leaders – evidences its unconstitutional scope and effect. Given these circumstances, this Court should find that 18 U.S.C. § 231(a)(3) is facially overbroad and unconstitutionally suppresses freedom of expression. *See U.S. v. Eichman*, 731 F.Supp. 1123, 1128 (D.D.C. 1990) ("[T]he government cannot regulate the non-speech elements of expressive conduct where its true aim is to suppress the speech elements of the actor's conduct.").

### B. The Statute is Constitutionally Invalid as Applied to Mr. Ayala

Notwithstanding the statute's facial infirmities, its application to Mr. Ayala's case is also unconstitutional. *Edwards v. District of Columbia*, 755 F.3d 996, 1001 (D.C. Cir. 2014) ("[T]o prevail on an as-applied First Amendment free speech challenge, [a party] must show that the regulations are unconstitutional as applied to their particular speech activity."). Prosecuting Mr. Ayala under 18 U.S.C. § 231(a)(3) is an impermissible and unconstitutional attempt by the Government to suppress Mr. Ayala's freedom of expression. Mr. Ayala's interactions with law enforcement were minimal and non-violent, and he was seen briefly carrying a distinctive flag displaying a political message and encouraging those around him to join his political cause. These acts constitute core expressive conduct. *See McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 345-46 (1995) (discussing protections afforded to core political speech); *United States v. Trump*, 88 F.4th 990, 1022 (D.C. Cir. 2023) (opining that speech and expressive conduct "about the roles of high-ranking public officials in the conduct of 'governmental affairs' constitutes core political speech entitled to the strongest form of First Amendment protection.").

Although the Affidavit accompanying the Criminal Complaint *insinuates* that Mr. Ayala launched a flagpole through the Senate Entrance Door, there is no evidentiary

support in the record to support such an assertion (notwithstanding the fact that January 6, 2021 was *extensively* photographed and recorded). The allegation that Mr. Ayala was merely present at the Capitol, and/or part of a crowd at the Capitol is insufficient to establish that he intentionally obstructed, impeded, or interfered with law enforcement's lawful performance of duty. Rather, the evidence presented by the Affidavit merely establishes that Mr. Ayala was engaged in core political expression while around the Capitol building on January 6, 2021 – conduct that cannot and should not be subject to restriction by the Government.

Given these circumstances, Mr. Ayala's case is distinguishable from other January 6th defendants who actively participated in violence, physically entered the Capitol building, and/or took steps to disrupt the political processes occurring therein. For example, in *United States v. Grider*, the defendant was found guilty under 18 U.S.C. § 231(a)(3) for entering the Capitol building and leading a mob to the Speaker's Lobby. 651 F. Supp.3d 1, 5 (D.D.C. 2022). At a bench trial, the Government presented evidence that the defendant "removed police barricades in an effort to defeat a police line"; attempted to "cut power to the Capitol building"; and provided a stolen police helmet to his fellow rioter, so as to enable the rioter to smash windows and doors in the Speaker's Lobby. *Id.* at 14. Simply put, the defendant in that case was not merely present on the grounds of the Capitol to engage in the proliferation of political expression, but instead breached and entered the Capitol building where he defaced and destroyed property in an effort to disrupt the political process and law enforcement activities inside the building. The *Grider* defendant's

violent and destructive conduct then clearly fell *outside* the First Amendment's protections for expressive conduct.³

By contrast, in Mr. Ayala's case, the Government has provided no analogous body of evidence or allegations in support of the Criminal Complaint's Affidavit. Mr. Ayala did not take steps to actively and intentionally interfere and/or obstruct law enforcement or the ongoing business inside of the Capitol by, for example, attempting to cut the power source to the building, breaking windows, or stealing police equipment. Rather, the evidence provided by the Affiant in the Affidavit accompanying the Criminal Complaint (ECF 1-1) establishes that Mr. Ayala was present on the Capitol's premises and engaged in expressive conduct, such as carrying a flag and encouraging others to join his political cause. He never entered the Capitol despite streams of individuals calmly entering and exiting the Capitol building through an adjacent door. Given these circumstances, application of 18 U.S.C. § 231(a)(3) in Mr. Ayala's case would constitute an unconstitutional suppression of speech.

## II.     The Statute is Unconstitutionally Vague and Provides for Arbitrary Enforcement

Even if the Court finds that 18 U.S.C. § 231(a)(3) is not facially overbroad in violation of the First Amendment, it should nevertheless dismiss the charge against Mr. Ayala because the statute also violates the Due Process Clause of the Fifth Amendment.

---

³ Although the description of the defendant's acts in *Grider* are extracted from the Court's findings of fact and conclusions of law following a bench trial, the case is nevertheless instructive as to the quantity and character of evidence under which a defendant may be found guilty of violating 18 U.S.C. 231(a)(3) in a manner that does not offend the First Amendment. Prior to the bench trial, however, the Court denied the defendant's motion to dismiss. *United States v. Grider*, 617 F. Supp.3d 42, 52 (D.D.C. 2022). The Court held that an as-applied challenge failed given that the complaint did "not allege any expressive conduct on Grider's part," but rather asserted that Grider engaged in violent and destructive conduct *inside* the Capitol building. *Id.* By contrast, the Affidavit accompanying the Criminal Complaint in Mr. Ayala's case acknowledges, albeit not explicitly, that Mr. Ayala engaged in expressive conduct such as carrying an expressive political flag and urging others (including law enforcement) to join his political cause.

The Government violates the Due Process Clause when it takes "away someone's life, liberty, or property under a criminal law so vague that it fails to give ordinary people fair notice of the conduct it punishes, or is so standardless that it invites arbitrary enforcement." *Johnson v. U.S.*, 576 U.S. 591, 595 (2015) (citing *Kolender v. Lawson*, 461 U.S. 352, 357-58 (1983)). "The prohibition of vagueness in criminal statutes 'is a well-recognized requirement, consonant alike with ordinary notions of fair play and settled rules of law,' and a statute that flouts it 'violates the first essential of due process.'" *Id.* (quoting *Connally v. General Constr. Co.*, 269 U.S. 385, 391 (1926)). Vagueness concerns are particularly acute when a statute imposes criminal penalties and implicates the First Amendment by chilling exercise of protected expression. *See Kolender v. Lawson*, 461 U.S. 352, 358-59 n.8 (1983).

A statute must fail for vagueness if (1) it fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden, *United States v. Harriss*, 347 U.S. 612, 617 (1954); and (2) "encourages arbitrary and erratic arrests and convictions." *Papachristou v. Jacksonville*, 405 U.S. 156, 162 (1972); *see also United States v. Williams*, 553 U.S. 285, 306 (2008) (statute is void for vagueness when it ties culpability to "wholly subjective judgments without statutory definitions, narrowing context, or settled legal meanings."); *United States v. Bronstein*, 849 F.3d 1101, 1106 (D.C. Cir. 2017) (instructing that a statute is unconstitutionally vague if its meaning specifies no standard of conduct). In considering the validity of a statute under the "void for vagueness" doctrine, the Court should analyze whether a person of ordinary intelligence would be able to discern the statute's meaning, and identify what conduct it prohibits, by relying on the words' plain, obvious, and common-sense meaning. *Id.*

Here, the language in 18 U.S.C. § 231(a)(3) fails to inform a person of ordinary intelligence of what conduct is subject to criminalization. For example, the statute begins by purporting to qualify

13

the conduct subject to criminalization. The problem? The statute's qualifying language – the phrase "any act" – is so broad and imprecise that it utterly fails to provide a person of ordinary intelligence with sufficient notice of the conduct that is prohibited. Indeed, "any act" can include anything from protected expressive conduct (e.g., waving a flag or chanting a slogan) to an egregious physical assault.

It is similarly impossible to decipher the meaning of the phrase, "incident to and during the commission of a civil disorder." Although the term "civil disorder" is defined by the statute, the explanation is silent as to whether a defendant must have *participated* in that civil disorder and/or how physically close a defendant must be to the civil disorder for the conduct to count as "incident to" it.

Finally, the statute's concluding language does little to elucidate its meaning or scope. The phrase "in any way *obstructs, delays, or adversely affects* commerce" opens the door for endless subjectivity over (1) what constitutes obstruction and/or delay, (2) what does or does not constitute an "adverse effect," and (3) what constitutes a sufficiently material "affect upon commerce" to fall within the proscription of the statute.

A South Carolina ordinance with similarly ambiguous language was found to be unconstitutionally vague in *McCoy v. City of Columbia*, 929 F. Supp. 2d 541, 554 (D.S.C. 2013). That ordinance made it unlawful "for any person to interfere with or molest a police officer." *Id*. The Court concluded that because the ordinance's language included no standard to provide guidance as to what conduct constituted an "interference" sufficient for criminal liability, the statute "authorize[d], if not encourage[d], discriminatory enforcement." *Id*.

Like that ordinance, section 231(a)(3) "includes no objective standard to guide the police in determining [what] conduct constitutes unlawful interference . . ." *Id*. As noted above, it is entirely

14

unclear whether the statute contemplates "interference" through mere verbal annoyance, or whether a higher standard – i.e., physical interference – is required for liability under the statute. Similarly, although the statute provides that the interference must be "incident to" civil disorder, it remains unclear what degree of proximity to the civil disorder is required. As a result, the statute's imprecise terms ultimately facilitate its subjective enforcement.

As discussed above, the subjectivity of the statute's invocation and enforcement was evident on January 6, 2021 when some January 6th protestors were politely escorted through the Capitol building, while others were doused with pepper spray and tear gas. Similarly, while some law enforcement officers may have characterized the "U.S.A." or "Drain the Swamp" chants echoing through the premises as interference with their law enforcement duties, others chose to join in the expressive incantations.[4] Indeed, reports and video surveillance even purport to show one Metropolitan Police Department Officer encouraging protestors to "Keep Going" as they charged through the Capitol's grounds.[5] The statute's ambiguous and subjective enforcement is further evidenced by the fact that at least twenty-nine January 6th defendants have reported that they believed they were "free to enter the Capitol because law enforcement authorities either didn't stop them from coming in or never told them they were not allowed to be there."[6] Simply put, the statute allows for far too much subjectivity in its enforcement, allowing individual preference and subjective considerations to dictate the scope of liability under and enforcement of the statute. This cannot survive constitutional scrutiny.

---

[4] Judy L. Thomas, *Video shows 3 police officers apparently join Jan. 6 protestors, filing in Kansas case says*, KAN. CITY STAR (Mar. 25, 2023), https://www.kansascity.com/news/politics-government/article273578070.html (reporting that "[t]hree police officers appear to be among those chanting 'drain the swamp' and 'Whose house? Our house!' as protestors invaded the Capitol on Jan. 6[.]").

[5] *Id.*

[6] Alexander Mallin, et al., *In new defense, dozens of Capitol rioters say law enforcement 'let us in' to building*, ABC NEWS (Feb. 19, 2021), https://abcnews.go.com/US/defense-dozens-capitol-rioters-law-enforcement-us-building/story?id=75976466.

## **CONCLUSION**

For the foregoing reasons, Mr. Ayala respectfully requests that this Court dismiss Count One of the Indictment, charging Mr. Ayala with violation of 18 U.S.C. § 231(a)(3).

Respectfully submitted,

*/s/ James M. Trusty*
James Trusty
1717 Pennsylvania Ave. NW, Suite 650
Washington, D.C. 20006

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 20th day of November, 2024, I caused a true and correct copy of the foregoing to be electronically filed with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record either via transmission of Notices of Electronic Filing generated by CM/ECF or in another authorized manner for those counsel or parties authorized to receive electronically Notices of Electronic Filing.

Dated: November 20, 2024                                   */s/ James M. Trusty*
                                                                              James Trusty