UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | CASE NO. 24-cr-326 (JDB) |
| v. : | |
| : | |
| CARLOS AYALA, : | |
| : | |
| Defendant. : | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS COUNT ONE OF THE INDICTMENT**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits its opposition to defendant Carlos Ayala's motion to dismiss Count One of the Indictment. ECF 35.

Ayala's motion should be denied. He raises a facial and as applied challenge to 18 U.S.C. § 231(a)(3), the alleged violation of Count One, on first amendment grounds but courts in this District, including this Court, have found that § 231(a)(3) is not facially overbroad and a violation of the First Amendment, *see, e.g.*, *United States v. McHugh*, 583 F. Supp. 3d 1, 28 (D.D.C. 2022) (Bates, J.) ("Section 231(a)(3) is not overbroad"), and his as-applied challenge improperly attacks the sufficiency of the government's evidence rather than identify a defect in the Indictment. He additionally asserts 18 U.S.C. § 231(a)(3) is unconstitutionally vague, but, as before, courts in this District, including this Court, have found that § 231(a)(3) is not unconstitutionally vague. *Id*. at 24 ("Section 231(a)(3) is not unconstitutionally vague."). Accordingly both challenges should be rejected and his motion denied.

1

I.      **Legal Standard**

An indictment is sufficient under the Constitution and Rule 7 of the Federal Rules of Criminal Procedure if it "contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend," *Hamling v. United States*, 418 U.S. 87, 117 (1974), which may be accomplished, as it is here, by "echo[ing] the operative statutory text while also specifying the time and place of the offense." *United States v. Williamson*, 903 F.3d 124, 130 (D.C. Cir. 2018). "[T]he validity of an indictment 'is not a question of whether it could have been more definite and certain.'" *United States v. Verrusio*, 762 F.3d 1, 13 (D.C. Cir. 2014) (quoting *United States v. Debrow*, 346 U.S. 374, 378 (1953)). An indictment need not inform a defendant "as to every means by which the prosecution hopes to prove that the crime was committed." *United States v. Haldeman*, 559 F.2d 31, 124 (D.C. Cir. 1976).

Rule 12 permits a party to raise in a pretrial motion "any defense, objection, or request that the court can determine *without a trial on the merits*." Fed. R. Crim. P. 12(b)(1) (emphasis added). It follows that Rule 12 "does not explicitly authorize the pretrial dismissal of an indictment on sufficiency-of-the-evidence grounds" unless the Government "has made a *full* proffer of evidence" or the parties have agreed to a "stipulated record," *United States v. Yakou*, 428 F.3d 241, 246-47 (D.C. Cir. 2005) (emphasis added)—neither of which has occurred here.

Indeed, "[i]f contested facts surrounding the commission of the offense would be of *any* assistance in determining the validity of the motion, Rule 12 doesn't authorize its disposition before trial." *United States v. Pope*, 613 F.3d 1255, 1259 (10th Cir. 2010) (Gorsuch, J.). Criminal cases have no mechanism equivalent to the civil rule for summary judgment. *See e.g.*, *United States v. Bailey*, 444 U.S. 394, 413, n.9 (1980) ("[M]otions for summary judgment are creatures of civil, not criminal trials"); *Yakou*, 428 F.3d at 246-47 ("There is no federal criminal procedural

mechanism that resembles a motion for summary judgment in the civil context"); *United States v. Oseguera Gonzalez*, No. 20-CR-40 (BAH), 2020 WL 6342948 at *5 (D.D.C. Oct. 29, 2020) (collecting cases explaining that there is no summary judgment procedure in criminal cases or one that permits pretrial determination of the sufficiency of the evidence). Accordingly, dismissal of a charge does not depend on forecasts of what the Government can prove. Instead, a criminal defendant may move for dismissal based on a defect in the indictment, such as a failure to state an offense. *See United States v. Knowles*, 197 F. Supp. 3d 143, 148 (D.D.C. 2016). Whether an indictment fails to state an offense because an essential element is absent calls for a legal determination.

Thus, when ruling on a motion to dismiss for failure to state an offense, a district court is limited to reviewing the face of the indictment and more specifically, the language used to charge the crimes. *See e.g.*, *United States v. Bingert*, 605 F. Supp. 3d 111, 118 (D.D.C. 2022) (a motion to dismiss challenges the adequacy of an indictment on its face and the relevant inquiry is whether its allegations permit a jury to find that the crimes charged were committed); *United States v. McHugh*, 583 F. Supp. 3d 1, 26-28 (D.D.C. 2022) (a motion to dismiss involves the Court's determination of the legal sufficiency of the indictment, not the sufficiency of the evidence); *United States v. Puma*, No. 21-CR-454 (PLF), 2022 WL 823079 at *4 (D.D.C. Mar. 19, 2022) ("In ruling on a motion to dismiss for failure to state an offense, a district court is limited to reviewing the <u>face</u> of the indictment and, more specifically, the <u>language used</u> to charge the crimes") (quoting *United States v. Sunia*, 643 F.Supp. 2d 51, 60 (D.D.C. 2009)).

## II.   BACKGROUND

On January 6, 2021, a Joint Session of the United States House of Representatives and the United States Senate convened to certify the vote of the Electoral College of the 2020 U.S.

Presidential Election. While the certification process was proceeding, a large crowd gathered outside the United States Capitol, entered the restricted grounds, and forced entry into the Capitol building. As a result, the Joint Session and the entire official proceeding of the Congress was halted until law enforcement was able to clear the Capitol of hundreds of unlawful occupants and ensure the safety of elected officials.

On January 6, 2021, the defendant ran through the crowd on restricted Capitol Grounds on the west front of the Capitol. As rioters overran police on the stairs adjacent to the inaugural stage scaffolding, the defendant ran in the direction of the stairs. Reaching an area adjacent to the stairs, the defendant climbed a police barricade placed against the staircase and climbed onto it. Eventually, he proceeded to the Upper West Terrace of the Capitol, where he was filmed multiple times. The Senate Wing Door of the Capitol had been breached and subsequently barricaded by U.S. Capitol Police prior to the defendant's arrival at the Senate Wing Door area, where he proceeded to the front of the crowd. CCTV footage captured the defendant inserting and waiving a flag into the U.S. Capitol directly in front of barricaded U.S. Capitol Police through a previously broken open window adjacent to the Senate Wing Door.



The defendant's flag that he waived through the broken window was subsequently used to jab at a U.S. Capitol Police Officer. Seconds later, the Senate Wing Door was breached again by

4

rioters and pulled open. When that happened, the defendant's flag was immediately thrown through the open door striking at least one police officer. Shortly thereafter, the Defendant was seen appearing to leave the area. The defendant subsequently approached Metropolitan Police Officers and encouraged a line of them to "Join us!", intimating they should join in the riot alongside him.

Based on his actions on January 6, 2021, the defendant was charged with violations of 18 U.S.C. §§ 231(a)(3), 1752(a)(1), and 1752(a)(2), and 40 U.S.C. § 5104(e)(2)(D), and 5104(e)(2)(G). *See* Indictment, ECF 27.

### III. ARGUMENT

#### A. 18 U.S.C. § 231(a)(3) Is Not Unconstitutionally Overbroad And Does Not Punish Free Expression

Ayala's first challenge is that § 231(a)(3) is unconstitutional under the First Amendment because § 231(a)(3) "criminalizes a substantial amount of constitutionally protected expression and is susceptible to inconsistent application and interpretation by law enforcement." ECF 35 at 8. Ayala points to the legislative history of the statute, *id*. at 9, and alleged "variability" in its application, *id*. at 8-9, arguing that "traditional forms of protest such as chanting" or "carrying expressive signs" "would face the same criminal punishment" under § 231(a)(3) as "rioters on the premises [who] engaged in violent and/or destructive conduct[.]" *Id*. at 9.

But as every judge in this District who has addressed this claim has held, that argument fails. A criminal law is facially overbroad only if "'a substantial number' of its applications are unconstitutional, 'judged in relation to the statute's plainly legitimate sweep.'" *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 449 n.6 (2008) (quoting *New York v. Ferber*, 458 U.S. 747, 769-71 (1982)); *see also Grayned v. City of Rockford*, 408 U.S. 104, 114 (1972). A facial overbreadth challenge faces a steep climb when the statute focuses mainly on

5

conduct, as § 231(a)(3) assuredly does. *See Virginia v. Hicks*, 539 U.S. 113, 119 (2003) (noting the "substantial social costs created by the overbreadth doctrine when it blocks application of a law to ... constitutionally unprotected conduct").

Relying in part on this Court's decisions in *McHugh*, Judge Berman Jackson explained in *United States v. Williams*, that, "[i]n the past year, at least four other courts in this district have considered whether section 231(a)(3) is overbroad on its face, and all have concluded it is not." No. 21-cr-0618 (ABJ), 2022 WL 2237301, at *6 (D.D.C. June 22, 2022).[1] Judge Berman Jackson "agree[d] with the reasoning in those decisions" that "the statute plainly covers conduct, not speech, as it criminalizes 'any *act* to obstruct, impede, or interfere with' a law enforcement officer engaged in the performance of official duties, and the terms 'obstruct, impede, or interfere with' are all plainly understood and must be supported by the facts in any particular case." *Id*. (emphasis added).[2] She further opined that, "[a]lthough some 'acts' could also serve an expressive function,

---

[1] Citing *McHugh*, 2022 WL 296304, at *17; *Mostofsky*, 2021 WL 6049891, at *8–9; *Nordean*, 2021 WL 6134595, at *17; and *Gossjankowski*, 2022 WL 782413, at *3. Judge Berman Jackson also cited three out of district cases that reached the same result. 2022 WL 2237301, at *6, citing *United States v. Howard*, 21-cr-28 (PP), 2021 WL 3856290, at *11-12 (E.D. Wis. Aug. 30, 2021); *United States v. Phomma*, 561 F. Supp. 3d 1059, 1067-68 (D. Or. 2021); and *United States v. Wood*, 20-cr-56 (MN), 2021 WL 3048448, at *7-8 (D. Del. July 20, 2021).

[2] As the language of § 231(a)(3) is clear, and since the starting point in statutory interpretation is the statute's plain language, "where the statutory language provides a clear answer, it ends there as well." *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 438 (1999); *see also United States v. Harrington*, No. 23-298 (JEB), 2024 U.S. Dist. LEXIS 124700, at *6 (D.D.C. July 16, 2024):

> Harrington does, however, go one step further than previous challengers, as he attempts to ground his hypotheticals in legislative history that purportedly demonstrates that the statute 'was aimed directly at expressive conduct [from the start].' This extra effort notwithstanding, his recitation meets the same fate as those before it, as this Court has construed § 231(a)(3)'s plain text to primarily, if not exclusively, target non-expressive conduct rather than speech. Given the text's clarity, the Court has no need to consult legislative history.

(citations omitted). Accordingly, this Court need not consider the legislative history cited by the defendant. ECF 35 at 9-10.

and one could come up with a hypothetical scenario in which the alleged interference involved particularly obstreperous speech, the law does not require dismissing a charge merely because there is a possibility that the provision could reach some constitutionally protected activity." *Id*. "Since section 231(a)(3) does not 'make unlawful a substantial amount of constitutionally protected conduct,' it is not overbroad on its face." *Id*. (citing *City of Houston v. Hill*, 482 U.S. 451, 459 (1987)).

Other judges of this District are in accord. *See Mostofsky*, 579 F. Supp. 3d at 22-24 (rejecting overbreadth challenge to § 231(a)(3) and observing that Section 231's "plain text, however, indicates that it is 'targeted primarily if not exclusively at conduct rather than speech"); *Nordean*, 579 F. Supp. 3d at 56-58 (§ 231(a)(3) is neither vague nor overbroad); *McHugh*, 583 F. Supp. 3d at 24-29 (same). So too for recent decisions. *See, e.g.*, *United States v. Gossjankowski*, No. 21-cr-0123 (PLF), 2023 U.S. Dist. LEXIS 4229, at *30 (D.D.C. Jan. 9, 2023); *United States v. Mock*, No. 21-cr-444 (JEB), 2023 U.S. Dist. LEXIS 98452, at *13 (D.D.C. June 6, 2023).

Further, while Ayala relies heavily on *City of Houston v. Hill*, 482 U.S. 451 (1987), ECF 35 at 7-8, this Court has already considered and rejected the same comparisons in *McHugh*. 583 F. Supp. 3d at 29 (noting that because of "§ 231(a)(3)'s specific-intent element and its several limitations, there is nothing 'alarming' about the breadth of this statute."). In short, as "many other judges in this district that have concluded '[] this statute governs conduct, not speech,' and is not overbroad." *United States v. Bray*, No. 23-306 (RC), 2024 U.S. Dist. LEXIS 140835, at *17 (D.D.C. Aug. 8, 2024). Ayala's attack on grounds of overbreadth should be rejected.

### B. *Ayala's As-Applied Challenge Improperly Attacks The Sufficiency Of The Evidence Rather Than Identifying A Defect In The Indictment.*

Ayala's second challenge, that § 231(a)(3) is unconstitutional as applied to this case, can also be quickly handled as an impermissible attack on the sufficiency of the evidence despite Ayala's attempt to dress the argument as a defense of his First Amendment rights. It is not.

Ayala argues that "[p]rosecuting Mr. Ayala under 18 U.S.C. § 231(a)(3) is an impermissible and unconstitutional attempt by the Government to suppress Mr. Ayala's freedom of expression." ECF 35 at 10. But his argument is based entirely on the government's evidence and proof related to the charge. *See id*. at 11 (discussing "the evidence presented by the Affidavit" and actions by rioters in *other* cases); *see also id*. at 12 ("in Mr. Ayala's case, the Government has provided no analogous body of evidence or allegations in support of the Criminal Complaint's Affidavit."). Federal courts do not evaluate the government's proof before trial, *see United States v. Critzer*, 951 F.2d 306, 307-08 (11th Cir. 1992), as "[t]here is no summary judgment procedure in criminal cases. Nor do the rules provide for a pre-trial determination of sufficiency of the evidence. . . . The sufficiency of a criminal indictment is determined from its face. The indictment is sufficient if it charges in the language of the statute."). The Indictment is sufficient on its face, and accordingly, the inquiry is complete. *See also United States v. Gonzalez*, No. 20-40 (BAH), 2020 U.S. Dist. LEXIS 201479, at *14-16 (D.D.C. Oct. 29, 2020) (discussing same). "[I]t is an unusual circumstance for the district court to resolve the sufficiency of the evidence before trial because the government is usually entitled to present its evidence at trial and have its sufficiency tested by a motion for acquittal under Rule 29 of the Federal Rules of Criminal Procedure." *United States v. Yakou*, 428 F.3d 241, 247 (D.C. Cir. 2005) (alterations and internal quotation marks omitted). "To dismiss the defendant's indictment before the government can 'present its evidence

at trial' thus would be inappropriate." *United States v. Pettaway*, 297 F. Supp. 3d 137, 142 (D.D.C. 2018) (citing *Yakou*, 428 F.3d at 247).

### C. 18 U.S.C. § 231(a)(3) Is Not Unconstitutionally Vague

Ayala concludes his attack on § 231(a)(3) with a vagueness challenge, asserting that the statute "fails to inform a person of ordinary intelligence of what conduct is subject to criminalization." ECF 35 at 13. He points to the language of "any act," "incident to and during the commission of a civil disorder," and "in any way obstructs, delays, or adversely affects commerce." *Id*. at 14.

However, despite Ayala's claim, the Indictment provides fair notice to him of the conduct that § 231(a)(3) punishes and is therefore not unconstitutionally vague. A number of judges in this district – including this Court – have rejected similar challenges to Section 231(a)(3). *See e.g.*, *United States v. Mock*, No. 21-CR-444 (JEB), 2023 WL 3844604, at *5 (D.D.C. June 6, 2023); *United States v. Gossjankowski*, No. 21-CR-123 (ABJ), 2023 WL 130817, at 11-13 (D.D.C. Jan. 9, 2023); *United States v. Fischer*, No. 21-CR-234 (CJN), 2022 WL 782413, at *2-3 (D.D.C. March 15, 2022) (reversed on other grounds); *United States v. Nordean*, 579 F. Supp. 3d 28, 57-58 (D.D.C. 2021); *Bingert*, 605 F. Supp. 3d at 128-130; *McHugh*, 583 F. Supp. 3d at 26-28; *United States v. Fisher*, No. 21-CR-234 (CJN), 2022 WL 782413, at *2-3 (D.D.C. Mar. 15, 2022); *United States v. Williams*, No. 21-CR-618 (ABJ), 2022 WL 2237301, at *4-5 (D.D.C. June 22, 2022).[3]

Significantly, the terms with which the defendant takes issue – "any act," "incident to and during the commission of a civil disorder," and "in any way obstructs, delays, or adversely affects

---

[3] Several courts outside this circuit have also rejected similar challenges to Section 231(a)(3). *See e.g.*, *United States v. Phomma*, 561 F. Supp. 3d 1059, 1069-70 (D. Or. Sept. 15, 2021); *United States v. Rupert*, No. 20-CR-104 (NEV/TNL), 2021 WL 1341632, at *16-20 (D. Minn. Jan. 6, 2021); *United States v. Wood*, No. 20-CR-56 (MN), 2021 WL 3048448 (D. Del. July 20, 2021); and *United States v. Howard*, No. 21-CR-28 (PP), 2021 WL 3856290 (E.D. Wis. Aug. 30, 2021).

9

commerce" – do not carry the potential for misunderstanding or make the statute "so standardless that it invites arbitrary enforcement." *Johnson*, 5576 U.S. at 595. Like the challenge denied by this Court in *McHugh*, the defendant's motion "misunderstand[s]" vagueness: "There is a crucial difference between reasonable people differing over the meaning of a word and reasonable people differing over its application to a given situation – the latter is perfectly normal, while the former is indicative of constitutional difficulty." *McHugh*, 583 F. Supp. 3d at 27.

The defendant also points to the effect on commerce required by the statute as a basis for vagueness. ECF 35 at 14. But this attack has been tried and rejected before. *United States v. Harrington*, No. 23-cr-298 (JEB), 2024 U.S. Dist. LEXIS 124700, at *10 (D.D.C. July 16, 2024) ("As § 231(a)(3) does not require a defendant to know that the civil disorder affects commerce, Harrington's contention that the language fails to precisely notify people of the requisite degree of such an effect must fail.") (citing *McHugh* 583 F. Supp. 3d at 26 ("the government [need not] prove that a defendant knew that the civil disorder in question affected interstate commerce")). Similarly, the reliance on "any act" as a basis for vagueness has also been considered and rejected. *See McHugh,* 583 F. Supp. 3d at 28 ("this exact argument has been heard and rejected by at least five different federal judges all within the last year. This Court joins them in concluding that § 231(a)(3) is not unconstitutionally overbroad.") (citations omitted).

The defendant also claims that the phrase "incident to and during the commission of a civil disorder" is vague because they cannot tell whether the statute requires an individual to have participated in the civil disorder or if it is sufficient that he be in the general vicinity of the event. ECF 35 at 14. This argument is also meritless. "The crime set forth by the statute is not mere presence at a civil disorder . . . but an act committed during the course of such a disorder, so 'civil disorder' simply describes the environment in which the act must be committed in order to be

10

subject to prosecution under § 231(a)(3)." *United States v. Mechanic*, 454 F.2d 849, 853 (8th Cir. 1971); *see also Howard*, 2021 WL 3856290, at *14 ("[T]he statute does not require the government to prove that the defendant created the civil disorder, or that he was participating in the civil disorder."). "[I]t is not just any public disturbance which is the subject of the section, but only public disturbances which (1) involve acts of violence (2) by assemblages of three or more persons, and which (3) cause immediate danger of or result in injury to (4) the property or person of any other individual." *Mechanic*, 454 F.2d at 853; *see* 18 U.S.C. § 231(1); *cf. United States v. Huff*, 630 F. App'x 471, 489 (6th Cir. 2015) (unpublished) (rejecting vagueness challenge to "civil disorder" term in 18 U.S.C. § 231(a)(2) and citing definition in 18 U.S.C. § 231(1)). *See also McHugh*, 583 F. Supp. 3d at 26, n.22.

Even if a broad range of public gatherings could be deemed "civil disorders," § 231(a)(3) criminalizes only particular conduct, not mere participation in such a disorder. The "civil disorder" language operates to <u>narrow</u> the situation where the statute may apply – unlike other statutes, which criminalize acts of obstruction, wherever they may take place. *See* 26 U.S.C. § 7212(a) (criminalizing obstruction of tax laws). The requirement that the *actus reus* take place in the context of a civil disorder does not make Section 231 vague; to the contrary, it limits its application.

### IV. **CONCLUSION**

For the foregoing reasons, the defendant's motion to dismiss Count One of the Indictment should be denied.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:     */s/ Patrick Holvey*
PATRICK HOLVEY
DC Bar No. 1047142
SARAH C. MARTIN
D.C. Bar 1612989
Assistant United States Attorneys

601 D Street NW
Washington, DC

(202) 252-7224
Patrick.Holvey@usdoj.gov

202-538-0035
Sarah.Martin@usdoj.gov

12