UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>CARLOS AYALA,<br><br>    *Defendant*. | Case No. 24-cr-00326-JDB |

DEFENDANT CARLOS AYALA'S REPLY IN SUPPORT
OF MOTION TO DISMISS COUNT I OF THE INDICTMENT

Defendant Carlos Ayala ("Mr. Ayala") by and through undersigned counsel respectfully moves, pursuant to Rule 12(b) of the Federal Rules of Criminal Procedure, for the Court to dismiss Count One of the Indictment, which charges a violation of 18 U.S.C. § 231(a)(3). In support of his Motion (ECF 35), and in Reply to the Government's Opposition (ECF 46), Mr. Ayala states the following.

ARGUMENT

I.   18 U.S.C. § 231(a)(3) Impermissibly Suppresses Expressive Conduct

The statutory history of 18 U.S.C. § 231(a)(3) unequivocally illuminates the statute's unconstitutional purpose: the suppression of expressive conduct. Indeed, the statue's primary proponent, Senator Russell Long of Louisiana, sought to pass the statute in order to quash and prevent instances of civil disobedience undertaken by the civil rights leaders of the 1960s. To this end, Senator Long publicly opined that this provision was needed to respond to "widespread disregard for law and order," as evidenced by the "so-called civil rights march led by Dr. Martin Luther King in the streets of Birmingham in March of 1963." 114 Cong. Rec. 1294 (Jan. 29, 1968). The statute's historical purpose – i.e., the suppression of the speech and expression of

1

Civil Rights leaders –supports the argument that the statute casts a wide net that impermissibly punishes expressive conduct.

The Government cursorily dismisses the context underlying the passage of 18 U.S.C. § 231(a)(3), arguing that the Court need not consider the statute's legislative history because the language of the statute is unambiguous. ECF 46 at 6. According to the Government, several courts in this Circuit have reached the same conclusion. *Id.* (citing *United States v. Harrington*, No. 23-298 (JEB), 2024 WL 3443767, at *3 (D.D.C. July 16, 2024)). The Government's argument that the statute cannot be considered ambiguous, because courts in this District have said so, is unpersuasive. Given the novel issues implicated by the prosecution of the alleged January 6th protestors, conclusory dismissal of Mr. Ayala's position is unwarranted and unaligned with recent Supreme Court jurisprudence.

Similar circumstances arose with regard to the prosecution of January 6th participants for obstruction, under 18 U.S.C. § 1512(c)(2). Several District Courts for the District of Columbia (and elsewhere) (1) rejected January 6th defendants' arguments that section 1512(c)(2) should be limited by the preceding provision so that it applied only to defendants who had taken "some action with respect to a document, record or other object."; and (2) concluded that the statute was not ambiguous so as to warrant the consideration of the statute's legislative history. *Fischer v. United States*, 603 U.S. 480, 484 (2024); *see also*, *e.g.*, *United States v. Grider*, 617 F. Supp. 3d 42, 48 (D.D.C. 2022) (rejecting the defendant's argument regarding the overly broad application of 18 U.S.C. § 1512(c)(2) and noting that the court and several others had already decided the issue); *United States v. McHugh*, 583 F. Supp. 3d 1, 10 (D.D.C. 2022) (rejecting the defendant's section 1512 argument, and opining that the same argument had already been rejected by courts in the district). Indeed, the D.C. Circuit Court of Appeals reached the same

conclusion in *United States v. Fischer*, 64 F.4th 329, 336 (D.C. Cir. 2023). In that case, the Circuit Could held that section 1512(c)(2) unambiguously covered *all forms* of corrupt obstruction of an official proceeding. *Id.* ("In our view, the meaning of the statute is unambiguous.").

Following the Circuit Court's ruling, the defendant appealed and the Supreme Court granted certiorari to consider the scope and application of the statute. 601 U.S. ——, 144 S.Ct. 537, 217 L.Ed.2d 285 (2023). Notwithstanding the Circuit Court's holding and the fact that several other lower courts had already deemed sections 1512)(c)(1) and (c)(2) to be unambiguous, the Supreme Court's analysis considered and relied upon the statute's legislative history and purpose to overturn the Circuit Court's ruling. *Fischer,* 603 U.S. at 491-92.

In its opinion, the Court noted that section 1512(c)(2) had been passed to "plug" a "loophole" discovered during the prosecution of Enron executives. *Id.* at 492 ("The parties agree that to plug this loophole, Congress enacted Section 1512(c) – the provision at issue here – as part of the broader Sarbanes-Oxley Act."). Specifically, the Court observed, as originally written, section 1512 "curiously failed to impose liability on a person who destroys records himself," and instead required prosecutors to prove that the "higher-ups at Enron" had "persuaded someone else to shred documents rather than the more obvious theory that someone who shreds documents is liable for doing so." *Id.* (cleaned up) (quoting S. Rep. No. 107-146, p 7 (2002)). Given these circumstances, the Court reasoned, "[i]t would be peculiar to conclude that in closing the Enron gap, Congress actually hid away in the second part of the third subsection of Section 1512 a catchall provision that reaches far beyond the document shredding and similar scenarios that prompted the legislation in the first place." *Id.* Although considering a different

statute in a different context, the Supreme Court's analysis and conclusion in *Fischer* are instructive.

The Supreme Court's *Fischer* decision undermines the Government's position here for two reasons. First, even though the argument made by the defendant in *Fischer* had already been rejected by several lower courts, the Supreme Court nevertheless agreed with the defendant's position and ruled that the "otherwise" clause in section 1512(c)(1) should not be read in the expansive manner advocated for by the Government. *Id.* at 483. Here too, the Court should find that other lower courts' rulings are not necessarily dispositive as to the validity of Mr. Ayala's arguments. Second, notwithstanding the fact that several lower courts had already characterized section 1512 as unambiguous, the Supreme Court analyzed the statute's legislative history to consider the permissible scope of the statute. *Id.* (quoting *United States v. Fischer*, 64 F.4th at 376 (Katas, J., dissenting)) ("Given that subsection (c)(2) was enacted to address the Enron disaster, not some further flung set of dangers, it is unlikely that Congress responded with such an unfocused and 'grossly incommensurate patch.'"). The Court should do the same here.

The context surrounding the passage of section 231(a)(3) supports the conclusion that the purpose and scope of the statute was intended to suppress the expressive conduct of the civil rights leaders of the 1960's. Given these circumstances, it seems unsurprising that the Government seeks to prevent the Court's close examination of the statute's racist and suppressive history. When considering the text of the statute in light of its historical context, it becomes apparent that section 231(a)(3) is unconstitutionally overbroad because its purpose and effect is the prohibition of a substantial amount of protected speech. Accordingly, Count One of the Indictment should be dismissed.

## II. The Indictment is Defective Because It Does Not Provide Mr. Ayala with Notice of the Conduct that 18 U.S.C. 231(a)(3) Punishes.

Next, the Government argues that the Indictment sufficiently provides Mr. Ayala with "fair notice" of the conduct that § 231(a)(3) punishes. Given these circumstances, the Government contends, the statute is not unconstitutionally vague and the Indictment used to charge Mr. Ayala is not defective. Both (1) the selective prosecution of January 6th participants; and (2) the Government's position in its opposition to the Mr. Ayala's Motion for a Bill of Particulars undermine this argument.

As an initial matter, the Government asserts that section 231(a)(3) is not so standardless as to invite arbitrary enforcement. ECF 46 at 10. The extensive public record capturing the events at the Capitol on January 6th proves the contrary. Law enforcement's administration of the law varied greatly from one individual to the next. For example, while some individuals were doused with tear gas, others were politely escorted through the Capitol building by law enforcement officers. And while some law enforcement officers characterized the "U.S.A." or "Drain the Swamp" chants as incitement or interference, others regarded the popular slogans as expressive speech and even chose to join in the protestors' chorus.[1] The Government's opposition makes no attempt to address the disparities in the statute's interpretation and application on the day of the election's certification, and instead argues that "[t]here is a crucial difference between reasonable people differing over the meaning of a word and reasonable people differing its its application to a given situation – the latter is perfectly normal while the former is indicative of constitutional difficulty." *Id.* (citing *United States v. McHugh*, 583 F. Supp. 3d 1, 28 (D.D.C. 2022)). Both circumstances are present here.

---

[1] Judy L. Thomas, *Video shows 3 police officers apparently join Jan. 6 protestors, filing in Kansas case says*, KAN. CITY STAR (Mar. 25, 2023), https://www.kansascity.com/news/politics-government/article273578070.html (reporting that "[t]hree police officers appear to be among those chanting 'drain the swamp' and 'Whose house? Our house!' as protestors invaded the Capitol on Jan. 6[.]").

As noted above, the record of events has established that law enforcement arbitrarily applied the law on January 6th, greatly differing in their interpretation of what conduct constituted an "act to obstruct, impede, or interfere" with the lawful performance of official duties. 18 U.S.C. § 231(a)(3). Moreover, the meaning of the words "obstruct, impede, or interfere" remains unclear as the Government's Opposition makes no attempt to clarify their meaning or the scope of their application. Does one obstruct law enforcement's lawful exercise of duty by merely chanting a slogan, peacefully, while others around him engage in violent acts? Can one be said to have impeded an official act by waving a flag bearing a political message in an area where governmental business is supposed to be taking place? Or is more required? The statute's vague language leaves these questions unanswered, and, more importantly, leaves a person of average intelligence unclear as to what conduct is prohibited under the law.

Despite their apparent linguistic similarities, the Government's Opposition makes no attempt to distinguish the statute at issue here, 18 U.S.C. § 231(a)(3), from the statute held unconstitutionally vague in *McCoy v. City of Columbia*, 929 F. Supp. 2d 541, 554 (D.S.C. 2013). That ordinance made it unlawful "for any person to interfere with or molest a police officer." *Id*. The Court concluded that because the ordinance's language included no standard to provide guidance as to what conduct constituted an "interference" sufficient for criminal liability, the statute "authorize[d], if not encourage[d], discriminatory enforcement." *Id*. Here too, section 231(a)(3) "includes no objective standard" to inform a person of ordinary intelligence of the meaning of the words "obstruct, impede, or interfere" in the context of the statute. *Id*. The lack of clarity underlying the meaning of these words, as used in the statute, is indicative of the statute's Constitutional infirmity.

The Government's Opposition to Mr. Ayala's Motion for a Bill of Particulars further highlights the statute's vague nature and ambiguous scope, particularly when applied to Mr. Ayala's circumstances. Therein, the Government briefly states that Mr. Ayala's "conduct with a flagpole by the Senate Wing Doors *will be part of its proof* as to Count One." ECF 45 at 4 (emphasis added). The Government does not clarify what *specific acts* associated with Mr. Ayala's purported "conduct with a flagpole" constitute a violation of Count One – i.e., 18 U.S.C. § 231(a)(3). Does this vague reference refer to the allegation that Mr. Ayala was merely holding a flagpole near the Senate Wing Doors? Or is more required (and alleged by the Government here) for violation of the statute? The language of the Indictment and the statute leave these questions unanswered.

Furthermore, the Government also elusively refers to "additional evidence of the defendant's conduct," that may, "of course" be introduced in the prosecution of Count One. *Id.* To this end, the Government further asserts that "the videos provided to defense counsel, highlight *several acts* that are relevant to the defendant's conduct" and "relevant to the offense charged in Count One." *Id.* (emphasis added). Again, the Defense – and indeed any person of ordinary intelligence – is left to wonder which (if any) of Mr. Ayala's purported acts constituted a violation of 18 U.S.C. § 231(a)(3). The First Amendment prohibits such a vague prohibition of expressive conduct.

Rather than quash any question as to the meaning of the terms "obstruct, impede, or interfere" as applied to Mr. Ayala's case, the Government has adopted an elusive posture which leaves Mr. Ayala guessing as to what acts were or were not permissible under the statute. This is particularly troubling in light of the fact that the Government filed a non-speaking Indictment devoid of any detail that would inform Mr. Ayala of the conduct specifically targeted. Neither the

7

text of the statute, nor the Government's vague descriptions cannot be said to provide notice to an average person of ordinary intelligence of the conduct the section 231(a)(3) punishes. This imprecision is heightened by the Government informally swearing off Mr. Ayala's verbal exhortations to the police ("join us!") as being part of the § 231 violation but then backtracking to a "wait and see" approach in their response to a motion for Bill of Particulars. Given these circumstances, Count One of the Indictment should be dismissed.

## **CONCLUSION**

For these reasons, and those stated in his Motion to Dismiss Count I (ECF 35) Mr. Ayala respectfully requests that this Court order the Dismissal of Count I of the Indictment.

Respectfully submitted,

*/s/ James M. Trusty*
James M. Trusty
Ifrah PLLC
1717 Pennsylvania Ave. NW, Suite 650
Washington, D.C. 20006
Email: jtrusty@ifrahlaw.com

*Counsel for Defendant*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 29th day of December, 2024, I caused a true and correct copy of the foregoing to be electronically filed with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record either via transmission of Notices of Electronic Filing generated by CM/ECF or in another authorized manner for those counsel or parties authorized to receive electronically Notices of Electronic Filing.

Dated: December 29, 2024  　　　　　　　　　*/s/ James M. Trusty*
　　　　　　　　　　　　　　　　　　　　　James Trusty